James S. Browk, Jr., J.
This action is based upon certain steel work performed pursuant to three written contracts and two oral contracts.
The plaintiff is a steel subcontractor and the defendants are the general contractor and owner.
The defense is based: (a) On the plaintiff’s failure to obtain a certificate of compliance from the Building Department of the *375 City of New York; (b) on the failure of the plaintiff to perform its contract in accordance with the plans and specifications and that instead of new steel it furnished second-hand steel which did not comply with the Building Code; (c) on the claim that the plaintiff obtained certificates of completion from the defendants’ architect through fraud and collusion and that said certificates were issued without the work being done in that the plaintiff did not furnish the eight-inch flange beams in accordance with plans and specifications.
The counterclaim seeks to recover: (1) The sum of $15,000 alleged as a necessary expenditure for the installation of concrete piers to reinforce the old steel allegedly installed not in accordance with the Buies of the Building Department; (2) the sum of $10,000 alleged as a necessary expenditure to correct an alleged tilt or uneveness in the steel work; (3) the sum of $3,400 alleged as a necessary expenditure for installation of certain shelf angles which the plaintiff should have installed and for the correction of an improper installation of steel.
Two of the written contracts provided for furnishing and erecting steel according to plans and contained no provision for the obtaining of Building Department approval. The third written contract for steelwork on a penthouse extension unrelated to the work on the first two contracts provided for the plaintiff’s obtaining approval of this agency.
Harry Shanus testified that plaintiff substituted a used grade beam at the request of the defendants’ architect. He states that this was requested by the architect because .of the shortage of steel in 1955 and the resulting delay in delivery of same; and that the architect’s request was further necessitated by the fact that the premises had been declared unsafe by the Building Department. The architect testified to the same effect upon the first trial and Harry iShanus further testified that he was reluctant to use the used beam as it required his cutting down of a 50-foot beam to accommodate the defendants.
This is the second trial of the action, the judgment for the plaintiff in the first trial having been reversed and a new trial ordered. The reversal was based on the failure to establish that the Building Department Begulations allowed the use .of a used beam and on the theory that this installation was illegal.
The question was resolved when the plaintiff during trial obtained the approval of the installation from the Building Department and the defendants introduced into evidence the Building Department’s regulation concerning same.
In my opinion, the record does not support the action of the trial court in dismissing the complaint and awarding the sum *376 of $1,750 to the defendants upon their counterclaim. There was no evidence introduced by defendants to refute .the testimony of the plaintiff and that of their own architect that the used beam had been ordered for the defendants by the said architect. Nor did they .offer any evidence to refute the testimony of the plaintiff that a written approval by the Building Department for the steelwork was to be obtained by the defendants and not by the plaintiff, or to explain why the two written contracts were silent as to written approval by the Building Department.
The only possible inference warranted by the evidence was that the defendants (the general contractor or owner) had the obligation to obtain the necessary written approval for the steelwork.
The plaintiff, in filing for and obtaining the written approval of the Building Department six years after the installation, did not thereby admit its obligation to obtain same. The trial court had indicated the necessity of an approval. The plaintiff by filing for same did more than it was obliged to do. Such approval, testified to by Mr. Pinsker, an engineer of the Building Department, resolved any question as to the adequacy and legality of the installation.
The third written contract for a penthouse extension had no relation to the used grade beam installed. The penthouse installation was approved by the steel inspector; however, he testified that no certificate of occupancy .or written approval was issued-because of several hazardous violations not connected with the work of the plaintiff. The records of the Building Department substantiated the testimony of the steel inspector in that two summonses were issued for these unrelated violations to which the defendants pleaded guilty in March and February, 1959. In fact, the records do not indicate that these violations were removed as of December 11, 1961. The trial court therefore had no evidence before it to refute the testimony of the steel inspector that the work of the plaintiff was done in an approved manner and that written approval was being held up because of the violations for the unrelated items.
Harry Shanus’ testimony that all beams except the grade beam were new was not refuted. The defendants produced only two witnesses, both experts. One of these, Mr. Kent, an engineer, testified that he believed the used grade beam to be inadequate but he did not know how the Building Department computed the load-bearing capacity of a beam. He also testified that he made all his computations according to a blueprint; yet the unrefuted testimony of Sol Shanus and the plaintiff’s experts was that the field conditions differed from the blueprint. *377 The piers on Avhich the beams rested were found to be 53 inches rather than 24 inches called for on the blueprint.
The defendants’ experts attempted to prove that another beam was a used beam. 'Their testimony was based on a visual examination made in September, 1960, five years after the installation at which time they found six drill holes in this beam.
Sol Shanus explained this by showing a purchase invoice indicating this to be a new beam. He further testified that he ordered this beam for another job but diverted it to this job when an amendment which was filed by the defendants’ architect changed the specification from a 20 BI 62 .to a 21 BI 62-beam.
The defendants did not deny or contradict the testimony of Mr. Shanus and Mr. Freshman concerning the substitution of the used beam, and this failure to testify by the owner and general contractor adds to the weight and credibility of said testimony.
There was testimony that one of the steel-beam connections was not according to the plans. This was admitted by plaintiff. However, no proof was introduced that its strength was insufficient and the plaintiff’s witnesses testified that it was an acceptable installation. The credibility of Mr. Freshman and the steel inspector was questioned by this court on the first appeal because of the belief that the use of the used beam was improperly approved by these two persons. This resulted from the failure on the first trial to introduce the Building Department regulation. However, this regulation was introduced into evidence on the- second trial.
The defendant owner has had the benefit of plaintiff’s steelwork and the use of the building since 1955 with no complaints of failure or cracking of walls. It is the defendants’ failure to correct other hazardous conditions which resulted in the placing of violations upon the premises.
In my opinion, plaintiff has fully performed its contracts and is therefore entitled to enforcement of its lien. The judgment dismissing the complaint should be reversed and judgment granted to the plaintiff as prayed for in the complaint.